## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DRACUT SCHOOL COMMITTEE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION AND ITS BUREAU OF SPECIAL EDUCATION APPEALS, <u>ET AL.</u>,**<br><br>**Defendants.** | CIVIL ACTION<br>NO. 1:09-cv-10966 |

## STATE DEFENDANTS' SUR-REPLY IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The state defendants Massachusetts Department of Elementary and Secondary Education and its Bureau of Special Education Appeals (the "BSEA" and collectively, the "State Defendants"), previously opposed the plaintiff Dracut School Committee ("Dracut") Motion for Summary Judgment (respectively, the "Motion" and "Opposition") and requested that judgment be entered affirming the BSEA's decisions. The State Defendants submit this response to Dracut's Reply to their Opposition by addressing three issues. First, the First Circuit's holding that graduation is not a bar to receiving "compensatory" education is not limited to certain types of graduation. Second, the Hearing Officer acted within his authority in awarding student compensatory education and, as part of that award, extending Student's eligibility. Third, Dracut's IEPs did not meet the IDEA's procedural and substantive requirements for "transitional" services. To the extent that Dracut raises any issues that are not explicitly address by this Sur-reply, the State Defendants rely on their Opposition.

**I. BECAUSE COMPENSATORY EDUCATION IS AN AVAILABLE REMEDY FOR DRACUT'S FAILURE TO PROVIDE TRANSITIONAL SERVICES WHILE HE ATTENDED HIGH SCHOOL, STUDENT'S GRADUATION IS NOT A BAR TO AN AWARD OF COMPENSATORY EDUCATION.**

As Dracut acknowledged in its original Motion, the First Circuit has held that "even after graduation, compensatory education is an available remedy." See Frazier v. Fairhaven School Committee, 276 F.3d 52, 63 (1st Cir. 2002) (citing Pihl v. Massachusetts Department of Education, 9 F.3d 184, 187, 188-89 & n. 8 (1st Cir. 1993); Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9, 13 and 20 (1st Cir. 2003); see also Dracut Memorandum of Law In Support of Motion for Summary Judgment at 8 (acknowledging that Student can receive compensatory education after graduation). In its Reply, Dracut backpedals and argues that certain types of graduation -- as in the case where a student has met local and state graduation requirements -- bar a student from receiving a compensatory education award. See Dracut Reply at 2-5. Dracut's argument disregards the First Circuit's precedent that graduation is not a bar to receiving compensatory education and misconstrues the Hearing Officer's decision with regards to Student's graduation.

If this Court were to accept Dracut's argument that compensatory education is available only for certain types of graduation, then the right to a free and appropriate education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., would be illusory. A local school district, like Dracut, could neglect to provide a student with the transitional services that are required under the IDEA, offer that student a diploma, and if he accepts, the local school district would be absolved of the IDEA's explicit requirements to provide transitional services. See State Defendants' Opposition at 14-18 (discussing the requirements under the IDEA for providing transitional services). In this magical scenario, the

student who accepted a diploma would have no available legal remedy for the denial of a FAPE, even though he did not receive the transitional services that he had a right to receive while he was attending high school. See id. at 37-40. The student would accept something that was immediately -- and understandably -- valuable, i.e., a high school diploma, in exchange for something that he would not get immediately; transitional services over time that may facilitate his movement from high school to post-school activities. See id. at 14-18.

The IDEA's explicit provisions regarding transitional services cannot be reduced to a magic trick. The appropriateness of an award of compensatory education turns on a school's provision of transitional services while a student attended high school, not on a school's decision to graduate a student and that student's decision to accept (or not accept) the proffered diploma at the end of high school. See State Defendants' Opposition at 37-40. As discussed above, and as Dracut has acknowledged, the First Circuit has held that compensatory education is available even if a student has graduated. See infra. The First Circuit has rejected the argument that there is a legal distinction between a student who has graduated -- and one who has not graduated -- in the consideration of the appropriateness of a compensatory education award. See Frazier, 276 F.3d at 63. Given this holding, there is no distinction between the types of graduation in awarding compensatory education. Moreover, Dracut's analysis of whether a student can graduate, i.e., by meeting local and state graduation requirements, is distinguishable from the Hearing Officer's -- and now this Court's -- analysis of whether Student received a FAPE within the meaning of the IDEA.

In Puffer, which Dracut does not distinguish in its Reply, this Court affirmed the decision that post-graduation services were an appropriate remedy to compensate a student for what she did not receive while she attended high school. Puffer v. Raynolds, 761 F. Supp. 2d 838 (D.

3

Mass. 1988); see also State Defendants' Opposition at 43-44 (discussing Puffer). Thus, a decision to affirm Student's graduation[1] and award of compensatory education finds support in prior decisions by the First Circuit and this Court. The Hearing Officer's decision should be affirmed.

**II. AS PART OF THE COMPENSATORY EDUCATION AWARD, THE HEARING OFFICER ACTED WITHIN HIS AUTHORITY IN EXTENDING STUDENT'S ELIGIBILITY.**

In its Reply, Dracut fails to meet its burden of demonstrating that the Hearing Officer abused his discretion in awarding Student compensatory education, an award which properly included an extension of Student's eligibility. Mr. I. v. Maine School Administrative District No. 55, 480 F.3d 1, 26 (1st Cir. 2007); see also State Defendant's Opposition at 38. Because Dracut procedurally and substantively denied Student a FAPE by failing to provide him with transitional services while he attended high school, the Hearing Officer acted within his "broad authority" to award compensatory education. See id. at 37-40.

For the reasons discussed in the Opposition, the extension of eligibility was an appropriate remedy given Student's needs. See State Defendants' Opposition at 44-46. Because the Hearing Officer did not abuse his discretion in extending Student's eligibility as part of the compensatory

---

[1] Moreover, the Hearing Officer's decision that graduation was appropriate was made in the context of his decision that Student was entitled to compensatory education. Administrative Record ("AR") 234; See State Defendants' Opposition at 40-42. The Hearing Officer ruled that:

> I find that I may extend Student's eligibility for two years for the purpose of receiving appropriate and sufficient compensatory services notwithstanding his graduation from High School. Therefore, Dracut may (and should) grant Student his high school diploma at this time. I find this approach preferable since it does not interfere with Dracut's intent to graduate Student, and it allows Student to receive a high school diploma, which is one of his goals, while at the same time, it can appropriately and sufficiently compensate Student.

AR 234. The Hearing Officer did not find that the graduation absolved Dracut of its responsibility to remedy its failure to provide Student with transitional services while he attended high school.

education award, this decision should be affirmed.  Mr. I., 480 F.3d at 26; see also State Defendant's Opposition at 38.   The compensatory education award, however, does not depend upon the extension of eligibility.[2]  See id. at 11 and 44-46.  While the effect of Student's graduation may be the termination of his statutory right to eligibility within the meaning of 603 C.M.R. 28.02(9), it did not prevent the Hearing Officer's from extending eligibility as part of a compensatory education award or from ordering services that approximated what Student would have received while he was still eligible.  In Puffer, this Court affirmed a decision to award a student post-graduation services that provided student with what she would have received while she was still eligible.  761 F. Supp. 2d at 853; see also State Defendants' Opposition at 45-46.  Thus, even if this Court were to vacate the extension of eligibility, it could still uphold the compensatory education award.

The Hearing Officer did not need to limit Student's compensatory education award to the services that Dracut could have -- and should have -- provided while he attended high school, but properly considered his current needs.  In this regard, Dracut misstates the Court's earlier holding. See Dracut Reply at 6.  In Puffer, this Court emphasized that the school needed to provide services "equal in time and scope," but that also "recognized" her post-school classes and "[took] into account her current needs."   761 F. Supp. 2d at 853.  Thus, the consideration of Student's current needs was appropriate.

Even if this Court considers Dracut's arguments that the compensatory education award must be limited in time and scope, the Hearing Officer's compensatory education award was appropriately circumscribed.  See Dracut's Reply at 6.  Under the decision, Dracut must provide

---

[2] Dracut's arguments to the contrary, the State Defendants have not taken the position that the extension of eligibility is "irrelevant."  Compare Dracut's Reply at 6 to State Defendants' Opposition at 11 and 44-46.

5

services for two years. See State Defendants' Opposition at 40. At the onset, Student's IEP team must develop an appropriate "transition plan." Id. Among other things, Dracut is required to conduct "[a] comprehensive social skills assessment," in order to identify appropriate services to address Student's social skill deficits. See id. at 41. The award for discrete services also included community-based services. See id. at 42 (relying on 20 U.S.C. § 1401(34)(C)). While these services have to be part of a "results-oriented process," the Hearing Officer did not require Dracut to achieve specific outcomes. See id. at 27-28. Thus, the Hearing Officer did not abuse his discretion in awarding Student compensatory education.

### III. DRACUT DID NOT COMPLY WITH THE IDEA'S PROCEDURAL AND SUBSTANTIVE REQUIRMENTS FOR PROVIDNG TRANSITIONAL SERVICES.

As a preliminary matter, Dracut argues for the first time on appeal that Dracut's completion of the Department of Elementary and Secondary Education's Transition Planning Form, means that, as a matter of law, Dracut complied with the IDEA's requirements for providing transitional services. See Dracut's Reply at 9-10. Because Dracut did not raise this claim during the underlying administrative hearings, or in its Motion, this claim is waived. See North Reading School Committee v. Bureau of Special Education Appeals, 480 F. Supp. 2d 479, 487 (D. Mass. 2007) ("[b]y choosing not to argue this issue before the BSEA, North Reading has foregone any right to argue it now"). Even if this Court considers this claim, Dracut's completion of the form, i.e., a state requirement, is distinct from the Hearing Officer's -- and now this Court's -- analysis of whether Student received a FAPE within the meaning of the IDEA.

While Student was attending high school, Dracut was required to include certain provisions regarding transitional services in his IEPs.[3] See State Defendants' Opposition at 15-16

---

[3]The State Defendants have not taken the position that Dracut needed to develop a

(relying on 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). Specifically, Dracut needed to identify Student's need for transitional services, appropriate transitional goals based upon assessments, a method for measuring progress towards those goals, and the services that would be offered to him.[4] See State Defendants' Opposition at 25-26.

It would have been impossible for Dracut to identify Student's needs and goals for transitional services, without assessments. Student's IEPs needed to be "updated annually." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa). The IEPs needed to include "appropriate measurable postsecondary goals <u>based upon age appropriate transition assessments</u>." Id. (emphasis added). Specifically, Dracut was required to rely upon "age appropriate transitional assessments <u>related to training, education, employment, and, where appropriate, independent living skills</u>." Id. (emphasis added). Before the BSEA, Dracut could have argued that it satisfied these requirements if it had demonstrated that its vocational assessment of Student was "age appropriate," and that this one assessment "related to training, education, employment, and, where appropriate, independent living skills," when Student's IEPs were "updated annually," but, for the reasons already discussed in the Opposition, it failed to do so. See State Defendants' Opposition at 19-24 (discussing procedural violations); 24-34 (discussing substantive violations). Even in its Reply, Dracut cites to the record, but does not explain the relationship between this one assessment and these four discrete areas. See Dracut's Reply at 12. Thus, Dracut did not properly assess Student's needs and goals for transitional services.

---

transition plan per se, but that Dracut needed to satisfy the IDEA's requirements for transitional services in Student's IEPs. See State Defendants' Opposition at 25-26.

[4] There is nothing "impermissible" about noting the similarities between the IEP requirements and the requirements for transitional services under the IDEA. See Dracut's Reply at 9.

In addition, Dracut reliance on <u>Lessard</u> -- that the IEPs and services offered to Student only needed to provide "some efficacy" in order to satisfy the IDEA's requirements for transitional services -- is misplaced.  See <u>Lessard v. Wilton Lyndeborough Cooperative School Dist.</u>, 518 F.3d 18, 30 (1st Cir. 2008).  In <u>Lessard</u>, the First Circuit found:

> In our estimation, the district court did not clearly err in finding the panoply of transition services adequate.  See [<u>Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.</u>, 2007 WL 1221103, at *9 (D.N.H. Apr. 23, 2007)].  In addition to the scheduled field trips, the December IEP incorporated a wide array of other transition services. These included six hours of pre-vocational training each week and regular instruction in specific transition-related skills (such as using a telephone, identifying workers in community settings, maintaining proper self-hygiene, and preparing food). This regimen apparently had <u>some efficacy</u>; the district court found that Stephanie's <u>transition skills were improving</u>.  See <u>id</u>.

518 F.3d at 30 (emphasis added).  In both its Summary Judgment Motion and Reply, Dracut has not demonstrated how Student's "transition skills were improving."  See Dracut's Reply at 13.  Dracut did not show that the services it offered to Student facilitated his movement to post-school activities as required under the IDEA.  See State Defendants' Opposition at 24-34.  Moreover, in <u>Lessard</u>, the determination that the services provided to that student resulted in "some efficacy," may have been appropriate given her particular disabilities and needs.  518 F.3d at 29 ("levels of progress must be judged with respect to the potential of the particular child.  So here, while the reported progress is modest by most standards, it is reasonable in the context of [the student's] manifold disabilities and low IQ").   Here, the Hearing Officer's determination that Dracut did not provide Student with appropriate transitional services (given his disabilities and needs), and that he did not receive the educational benefits of transitional services, are entitled to deference.  See State Defendants' Opposition at 24-34.

## **CONCLUSION**

For the foregoing reasons, as well as those reasons discussed in the State Defendants' Opposition, this Court should deny Dracut summary judgment and enter a judgment affirming the

BSEA's decisions.

                                               Respectfully submitted,

                                               STATE DEFENDANTS

                                               By their attorney,

                                               MARTHA COAKLEY
                                               ATTORNEY GENERAL

                                               /s/ Christine Baily
                                               Christine Baily, BBO No. 643759
                                               Assistant Attorney General
                                               Government Bureau
                                               One Ashburton Place
                                               Boston, MA 02108-1698
                                               (617) 963-2617
                                               facsimile (617) 727-5785
                                               christine.baily@state.ma.us

February 10, 2010

**CERTIFICATE OF SERVICE**

      I hereby certify that this document was filed through the ECF system, but paper copies were sent to the registered participants as identified on the Notice of Electronic Filing ("NEF") on this date.

                                    /s/ Christine Baily
                                    Christine Baily
                                    Assistant Attorney General

February 10, 2010