UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DRACUT SCHOOL COMMITTEE,<br><br>    Plaintiff,<br><br>v.<br><br>BUREAU OF SPECIAL EDUCATION APPEALS OF THE MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION, MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION, P.A. AND C.A.,<br><br>    Defendants.<br><br>And<br><br>JOHN DOE and JANE DOE,<br><br>    Plaintiffs,<br><br>v.<br><br>DRACUT PUBLIC SCHOOLS,<br><br>    Defendant. | Civil Action No. 1:09-cv-10966-PBS<br><br><br><br><br><br><br><br><br><br>Civil Action No. 1:09-cv-10561-PBS |

**P.A. AND C.A.'S PETITION FOR ATTORNEYS' FEES AND COSTS AND MOTION TO DISCONTINUE STAY AND CONSOLIDATE CASES[1]**

---

[1] Except as otherwise specified, this Motion uses the same defined terms as the Court's September 3, 2010 Memorandum and Order (the "Order," Docket Entry # 129), and all references to Docket Entries refer to entries in the docket of <u>Dracut School Committee v. Bureau of Special Education Appeals of the Department of Elementary and Secondary Education, et al.</u>, Civil Action No. 1:09-cv-10966-PBS (the "Main Action").

Pursuant to this Court's Final Judgment dated September 3, 2010 (Docket Entry # 130), Fed. R. Civ. P. 54(d)(2)(B), and 20 U.S.C. §1415(i)(3)(B), defendants C.A. and P.A (the "Individual Defendants") petition for an award of attorneys' fees and costs associated with their successful litigation before the BSEA and this Court.  In order to streamline the fee petition process, the Individual Defendants also move to (a) release the stay of the action captioned <u>John Doe and Jane Doe v. Dracut Public Schools</u>, Civil Action No. 1:09-cv-10561-PBS (the "Fee Action"), and (b) consolidate the Fee Action and the Main Action.  Defendants are now entitled to an award of fees and expenses from three phases of their dispute with Dracut:  (1)  the proceedings before the BSEA that culminated in the Initial Decision (which are the subject of the Fee Action); (2) the proceedings before the BSEA that culminated in the Compliance Decision (which are subject of Count III of the Individual Defendants' Counterclaim in the Main Action, <u>see</u> Docket Entry # 26 at 11-12);[2] and (3) the proceedings before this Court in the Main Action.  It is appropriate for this Court to address fee claims stemming from related components of an IDEA dispute in a consolidated petition.  <u>See, e.g.</u>, <u>Kerry B. v. Union 53 Public Schools</u>, 882 F.Supp. 184, 187-190 (D.Mass. 1995) (Saris, J.) (addressing consolidated fee claim stemming from two distinct BSEA petitions and resulting federal court litigation).

**I.     The Court Should Release Its Stay Of The Fee Action And Consolidate It With The Main Action.**

In the Fee Action, the Individual Defendants claimed a right to attorneys' fees for litigation associated with the Initial Decision.  <u>See</u> Fee Action Docket Entry # 1.  The parties stayed the Fee Action so that the Court could first resolve the Main Action.  <u>See</u> Fee Action Docket Entry # 11.  Now that the Main Action has concluded, the Fee Action can proceed.

---

[2] The parties jointly agreed to the dismissal of Counts I-II of the Counterclaim, <u>see</u> Docket Entry # 106, but Count III, which seeks attorneys' fees and costs related to the Compliance Decision, remains active.

Furthermore, because the Fee Action involves the same subject matter as the Individual Defendants' fee claim in the Main Action, the Court should consolidate the two actions for purposes of efficiency.

## II. The Individual Defendants Qualify For An Attorneys' Fee And Cost Award.

The IDEA allows district courts to award reasonable attorneys fees and costs to parents who prevail in litigation at either the administrative or judicial level. 20 U.S.C. § 1415 (i)(3)(B)(i). This is true whether those parents were plaintiffs or defendants. See Maine School Administrative Dist. No. 35 v. Mr. R., 321 F.3d 9, 16 (1st Cir. 2003) ("A triumphant defendant may qualify as a prevailing party for the purpose of obtaining a fee award."). Parents qualify for "prevailing party" status under 20 U.S.C. §1415(i)(3)(B) when they obtain an enforceable "material alteration of the legal relationship of the parties." Buckhannon v. West Virginia Dept. of Health and Human Res., 532 U.S. 598, 622 (2001); see also Doe v. Boston Public Schools, 358 F.3d. 20, 27 (1st Cir. 2004) (applying Buckhannon to fee awards under the IDEA). Stated another way, a parent prevails when the outcome of the litigation "materially alter[s] the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other." Mr. R., 321 F.3d at 14 (1st Cir. 2003).

It is beyond dispute that the Individual Defendants meet the Buckhannon standard. In the Initial Decision, the Hearing Officer found that Dracut had denied Student a FAPE, ordered that Dracut provide two years of compensatory services to be developed in conjunction with the Individual Defendants' experts, and extended Student's eligibility under the IDEA for two years. Order at 18-19. With respect to the Initial Decision, this Court upheld the Hearing Officer's finding that Dracut denied C.A. a FAPE by both failing to provide meaningful pragmatic language services and by providing inadequate vocational and independent living services.

Opinion at 29-32.  While the Judgment overturned C.A.'s eligibility extension, it (1) upheld the Hearing Officer's entire compensatory award with respect to pragmatic language services, and (2) remanded the vocational and independent-living services award for redetermination in light of the Court's legal rulings.  Opinion at 36-38.  Similarly, while the Judgment reversed the Initial Decision to the extent that it required Dracut to hire the Individual Defendants' experts as consultants, it did "not reverse the order to the extent it requires the school district to hire independent consultants with sufficient expertise at a reasonable rate of pay."  Order at 39.

In the Compliance Decision, the Hearing Officer found that Dracut had failed to comply with his initial ruling by offering an unreasonably low rate of pay for consulting services, id. at 19, and this Court upheld that determination in full.  As the Opinion explains, "[t]he Hearing Officer concluded properly that state law does not require Dracut to provide outside consultants who provide services other than assessments with compensation at $32.15 an hour.  Dracut offers no argument and the record yields no facts undermining his conclusion that $125 per hour is a reasonable rate."  Opinion at 39-40.

These results inarguably altered Dracut's relationship with the Individual Defendants to the Individual Defendants' benefit.  The Individual Defendants are, accordingly, prevailing parties within the meaning of 20 U.S.C. § 1415 (i)(3)(B)(i).  Mr. R., 321 F.3d 9, 14-15.

### III. The Fee And Cost Request.

The Individual Defendants seek a total award of $678,271.73, including $665,309.09 in attorneys' fees and $12,962.64 in costs.  These figures include $485,631.22 in fees and costs associated with the Disability Law Center's ("DLC's") representation of the Individual Defendants before the BSEA and in the Main Action, and $192,640.51 in fees and costs associated with DLA Piper LLP (US)'s ("DLA Piper's") representation of the Individual Defendants in the Main Action.

The Individual Defendants' claim is appropriate given the scope of this litigation, which included:

- Eight months of litigation before the BSEA culminating in a hearing that involved seventeen witnesses, produced a 1569 page administrative record, and resulted in the 44-page Initial Decision;

- Two more months of compliance litigation before the BSEA culminating in an evidentiary hearing that involved four witnesses, produced 710 pages of administrative record and transcript, and resulted in the 14-page Compliance Decision; and

- Over a year of litigation before this Court that resulted in a forty-page decision and involved, for summary judgment alone, a total of 152 pages of briefing by Dracut, 132 pages of briefing by the Individual Defendants, and 218 pages of briefing by the Attorney General's Office.

It is also important to recognize that the size and complexity of this litigation is a direct result of Dracut's own decisions.  Dracut: (1) precipitated the Initial Decision when it chose to provide inadequate services to C.A. despite having been "spoon-fed" a program of adequate services; see Opinion at 25; (2) precipitated the Compliance Decision when it chose, without legal basis, to pay consultants no more than $32.14 per hour; and (3) chose to continue litigation by appealing to this Court.  Dracut also unnecessarily complicated the Main Action by persisting in its due process claims, which (after discovery and the filing of a combined total of 342 pages of additional briefing and exhibits by the parties, see Docket Entries ## 114-26) the Court found had no merit.[3]  See Electronic Order dated September 3, 2010.

---

[3] Judge Payne's decision in JP ex rel. Peterson is relevant on this point.  In describing an issue that the district ought to have dropped after examining the record, he wrote:  "This unwarranted objection is a good example of how the contentious approach to this litigation taken by [the district] has increased the cost of the litigation.  Of course, [the district] is free to take a contentious approach to defending the case, but it must be prepared to pay the cost of so doing."  JP ex rel. Peterson, 641 F.Supp.2d 499, 507 n.3 (E.D. Va. 2009).

Dracut will likely argue that the Court should reduce the Individual Defendants' fee claim because it will place an undue burden on Dracut's budget. Judge Payne refuted the same argument in <u>JP ex rel. Peterson</u>, <u>supra</u>:

> [I]t is clear that the Supreme Court has provided a clear answer to [the district's] contention that the burden placed on it by attorneys' fees indicates that an award of those fees is inappropriate: school districts assume the risk of substantial-but-reasonable awards when they violate the IDEA. *See [Florence County Sch. Dist. Four v.] Carter,* 510 U.S. at 15, 114 S.Ct. 361. [The district's] argument is further undercut by its own vigorous defense throughout the course of this litigation. *See Saleh [v. Moore],* 95 F.Supp.2d at 560-61, 570 (explaining that a defendant who mounts a vigorous defense will be responsible for the costs incurred by a prevailing plaintiff in meeting that defense). <u>In a very real sense, therefore, the size of the attorneys' fees award in this case is attributable, in significant part, to the conduct of [the district] in violating the IDEA and then engaging in an aggressive defense.</u> Hence, reducing the size of the attorneys' fees award because of the financial burden placed on [the district] certainly is not appropriate on the facts of this case if, indeed, it ever would be appropriate to do so.

641 F.Supp.2d. at 525 (emphasis added). Given Dracut's aggressive litigation strategy, the rationale discussed in <u>JP ex rel. Peterson</u> is equally applicable to this case.

Finally, this award will not be a windfall. DLC is a non-profit agency that uses award proceeds to fund additional free legal services for persons with disabilities. <u>See</u> Affidavit of Pamela J. Coveney, Esq., ¶ 2 ("Coveney Aff.," attached as <u>Exhibit A</u> hereto). While DLA Piper is a for-profit firm, it regularly donates fee award proceeds from *pro bono* cases to non-profit legal services providers. In this instance, in addition to the anticipated donation(s), DLA Piper anticipates the possibility of using some of the funds it elects to retain to advance its own pro bono programs, such as the Boston-based Education Rights Project. <u>See</u> Affidavit of Daniel E. Rosenfeld, Esq., ¶ 5 ("Rosenfeld Aff.," attached as <u>Exhibit F</u> hereto). It is also important to recognize that, because Attorneys Iverson and Rosenfeld normally bill paying clients at roughly twice the rate they are claiming for reimbursement in this litigation, DLA Piper has already subsidized their efforts on the Individual Defendants' behalf in an amount roughly equal to the

size of the requested award.  See Affidavit of Matthew Iverson, Esq., ¶ 6 ("Iverson Aff.," attached as Exhibit D hereto); Rosenfeld Aff. ¶ 8.

### A. The Lodestar Calculation.

The Individual Defendants arrived at their fee totals by applying the standard "lodestar" mechanism for calculating awards under federal fee-shifting statutes, including the IDEA.  See, e.g., Perdue v. Kenny A., 130 S.Ct. 1662, 1672 (2010).  The lodestar method computes a fee award by multiplying a reasonable rate of compensation per hour of work by the number of hours each attorney devotes to the case.  Both the rate of compensation and the number of hours expended can be subject to a variety of adjustments.  See, e.g., Alfonso v. Aufiero, 66 F.Supp.2d 183, 191 (D.Mass. 1999) (Saris, J.).

#### i. Rates For The DLC And DLA Piper Attorneys.

The IDEA states that attorneys fees are to be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  U.S.C. at 1415 (i)(3)(C).  The Individual Defendants seek reimbursement for the work of DLC attorneys Pamela J. Coveney, Richard M. Glassman, and Janine A. Solomon (collectively, the "DLC Attorneys").  Attorneys Coveney and Solomon represented the Individual Defendants before the BSEA and this Court, while Attorney Glassman provided support to both DLC counsel and assisted in preparing the post-hearing brief in the first BSEA proceeding.  Attorney Coveney has approximately 29 years experience practicing law and nine years experience practicing special education law.  See Affidavit of Pamela J. Coveney, Esq. ¶ 2.  Attorney Glassman has 25 years experience as a practicing attorney.  See Affidavit of Richard M. Glassman, Esq. ¶ 7, attached as Exhibit B hereto.  Attorney Solomon has fourteen years experience practicing law and seven years specializing in special education law.  See Affidavit of Janine A. Solomon, Esq. ¶ 2,

attached as Exhibit G hereto.   Each attorney's relevant experience and academic background are fully detailed in their affidavits.[4]

Attorneys that work for privately-funded non-profit law firms (like DLC) are entitled to the same fee award under a federal fee-shifting provision as a private attorney.  See Blum v. Stenson, 465 U.S. 886, 895 (1984).  To establish a comparable prevailing rate for the DLC Attorneys, the Individual Defendants rely on the affidavit of Allan G. Rodgers Esq., (the "Rodgers Aff.") attached as Exhibit E hereto.  Attorney Rodgers is the Executive Director of the Massachusetts Law Reform Institute (MLRI), a legal services advocacy and support center for low-income persons and their advocates.  The Rodgers Aff. discusses and attaches a fee scale (the "MLRI scale") that the MLRI has developed to standardize fee requests by public interest organizations in Massachusetts.[5]  Id. ¶¶ 3-4 & attached chart.

The Individual Defendants also seek reimbursement for the work of DLA Piper attorneys Matthew Iverson and Daniel E. Rosenfeld and paralegal Corinne Kyritsopolous for their work in the Main Action.  Attorney Iverson has approximately eight years experience practicing law and four years experience practicing special education law.  Iverson Aff. ¶¶ 2-4.  He manages DLA Piper's Education Rights Project, which provides pro bono legal services to indigent parents in special education disputes, and will serve as a guest lecturer in the fall for Harvard Law School's Education Law Clinic.  Id. ¶¶ 4-5.  Attorney Rosenfeld has 19 years of experience practicing

---

[4]   The Individual Defendants are not seeking reimbursement for 64.3 hours of work on this litigation performed by DLC Attorney Matthew Engel.  See Glassman Aff. ¶ 4.

[5]   The Individual Defendants have not located any recent legal decisions discussing the prevailing rates for special education litigation in the Boston market.

law and is the supervising partner for the Education Rights Project.[6]  Rosenfeld Aff. ¶ 3.  Further detail regarding each attorney's relevant experience and academic background are set forth in their affidavits.

Although Attorneys Iverson and Rosenfeld typically bill paying clients $585 and $670 respectively, see Iverson Aff. ¶ 6, Rosenfeld Aff. ¶ 8, the Individual Defendants are seeking reimbursement at an hourly rate of $335 for Attorney Iverson and $350 for Attorney Rosenfeld.  As support for these rates, the Individual Defendants rely on the Affidavit of Eileen Hagerty, Esq., ("Hagerty Aff.") attached as Exhibit C hereto.  Attorney Hagerty is a partner at the firm of Kotin, Crabtree & Strong, LLP, a Boston law firm specializing in special education law.  Her firm bills paying clients $335 per hour for senior associate special education work and $350 per hour for partner special education work.[7]  Id. ¶ 7.  These rates are comparable to or lower than the rates charged by attorneys of equivalent skill and experience performing special education work in the Boston market.  Id.  Attorney Hagerty has followed the Main Action, read the parties' briefs, attended the summary judgment hearing, and reviewed the Opinion.  Id. ¶ 8.  In her opinion, the work performed by the DLA Piper Attorneys in this case is of the same kind and quality she would expect from attorneys at her own firm.  Id.  The Individual Defendants seek reimbursement for paralegal time at $125 per hour in accordance with the MLRI scale.  See Rodgers Aff. ¶ 3 & attachment.

---

[6]  Although Attorneys Glassman and Rosenfeld are relatively new to special education law, courts routinely recognize the applicability of experience in other areas of law in awarding fees under the IDEA.  See M.S. v. New York City Board of Education, 2002 WL 31556385, *5 (S.D.NY) (finding great benefit in the attorneys' 35 and 24 years experience, respectively, practicing law at legal services organizations even though they did not handle IDEA cases).

[7]  In comparison, Attorney Hagerty's firm charges $275 per hour for special education work performed by an associate with two years experience.

In accordance with this Court's decision in Alfonso, supra, the Individual Defendants have also adopted the concept of core and non-core rates for the purposes of this request. A table setting forth the core and non-core billing rates claimed by each of the Individual Defendants' attorneys appears below:

|  | Core Hourly Rate | Non-Core Hourly Rate |
| --- | --- | --- |
| Pamela J. Coveney, Esq. | $435 | $289.71 |
| Janine Solomon, Esq. | $322 | $212.52 |
| Richard Glassman, Esq. | $420 | $280 |
| Matthew Iverson, Esq. | $335 | $223.11 |
| Daniel E. Rosenfeld, Esq. | $350 | $233.10 |
| Corinne N. Kyritsopoulos, paralegal | $125 | N/A |

**ii.    Hours.**

As set forth in more detail in spreadsheets attached as Exhibits H-K to this Motion (the "Spreadsheets"), the Individual Defendants used the billing calculation procedures detailed in Alfonso (with certain modifications described below) to determine their lodestar claim for this request. Each attorney submitting a fee claim has affirmed the data contained in the Spreadsheets. See Coveney Aff. ¶ 11; Glassman Aff. ¶¶ 3, 14; Iverson Aff. ¶¶ 8-9; Rosenfeld Aff. ¶¶ 9-10; Soloman Aff. ¶ 7. The Individuals Defendants adjusted their calculations as follows:

(A)  Core Work: The Individual Defendants defined core work as "the time spent performing specified legal research, drafting and editing legal documents for submission to the Court and [other parties], reviewing legal submissions of opposing parties, appearing in court and preparing for hearings and trial, preparing for and taking depositions, and performing other tasks involving independent legal thought." Alfonso, 66 F.Supp.2d at 196. In conformance with this guidance, the Individual Defendants have considered communications with and review of pleadings filed by the Attorney General to be core work, as the Attorney General represented

the BSEA and DESE, whose interests in defending the Decision were distinct from those of the Individual Defendants. The Individual Defendants designated all other activities, including the time spent preparing this request, as non-core work.[8] See Alfonso, 66 F.Supp.2d at 196.

(B) Counterclaims: As set forth above, the parties settled the Individual Defendants' first and second Counterclaims. The Individual Defendants have not, therefore, sought reimbursement for their work on those Counterclaims. The Individual Defendants also have not sought reimbursement for time spent on on-going compliance proceedings before the BSEA that are outside the Main Action's scope. In so doing, the Individual Defendants are not waiving their right to seek reimbursement for attorney time spent on on-going compliance proceedings.

(C) Paralegal Work: The Individual Defendants have adopted a standard rate for paralegal and intern hours that does not distinguish between core and non-core work, as the lower rate charged for this work already reflects its non-legal nature.

(D) Travel: The Individual Defendants have made no adjustment for travel time associated with the federal litigation, as the Court is located within a mile of both DLC's and DLA Piper's offices. The Individual Defendants have accounted for travel to and from the BSEA as non-core work.

(E) Electronic Filing: Alfonso indicated that electronic filing should be billed at a reduced rate because it is a "clerical or secretarial task." Id. at 196. Since Alfonso was written, however, the District of Massachusetts has modified its rules to equate the electronic filing of a pleading with the signing of that pleading by an attorney, effectively requiring an attorney to perform this task. See United States District Court, District of Massachusetts Electronic Case

---

[8] If Dracut contests this petition in a manner that requires a legal rebuttal, the Individual Defendants reserve the right to claim time spent preparing that rebuttal as core work.

Filing Procedures § J.  The Individual Defendants have accordingly classified time spent electronically filing a document as core work.

(F)  Collective Time Entries:  If a time entry references both core and non-core work, or work on the Counterclaims and work on the balance of the Main Action, without distinguishing between the time spent on each, the Individual Defendants have apportioned the time entry based upon the number of tasks in each category.  See Alfonso, 66 F.Supp.2d at 196.  For example, if a three hour time entry references one task related to the Counterclaims and two tasks related to the balance of the Main Action, the Individual Defendants have only requested reimbursement for two hours of time.  Where annotation by task is necessary, the Spreadsheets designate a core task with the letter "C," a non-core task with the letter "N," and a task for which the Individual Defendants are not seeking reimbursement with an asterisk.

The Individual Defendants' lodestar calculations are set forth in the following table:

|  | Core Rate | Non-Core Rate | Total Core Hours | Total Non-Core Hours | Total Claimed |
|---|---|---|---|---|---|
| Pamela J. Coveney, Esq. | $435 | $289.71 | 514.9 | 233 | $291,483.93 |
| Janine Solomon, Esq. | $322 | $212.52 | 361.8 | 165.7 | $151,714.16 |
| Richard Glassman, Esq. | $420 | $280 | 64.35 | 48.8 | $40,691 |
| Matthew Iverson, Esq. | $335 | $223.11 | 307 | 158.5 | $137,889 |
| Daniel E. Rosenfeld, Esq. | $350 | $233.10 | 104.2 | 21.1 | $41,344 |
| Corinne N. Kyritsopoulos, paralegal | $125 | N/A | 17.5 | N/A | $2,187 |

**B.     The Court Should Not Adjust The Individual Defendants' Lodestar Calculation.**

As this Court explained in <u>Alfonso</u>, a court may adjust a fee claim to reflect (a) a parties' claim-by-claim success, (b) the relief actually achieved, and (c) the societal importance of the right vindicated.  <u>Id.</u> at 198-99.   No adjustment is warranted in this case.

**i.     Claim-By-Claim Success:**

"'If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order.' . . . In contrast, when plaintiffs have 'prevailed up and down the line' on their claims, 'a claims-based, results-obtained fee reduction is wholly inappropriate.'" <u>Alfonso</u>, 66 F. Supp. 2d at 198, quoting <u>Coutin v. Young & Rubicam P.R.</u>, 124 F.3d 331, 338 (1st Cir. 1997).  In this case, the Individual Defendants "prevailed up and down the line on their claims."  <u>Alfonso</u>, <u>supra</u>.  While the Court altered the Hearing Officer's <u>relief</u> order (see below), it upheld all of the Hearing Officer's <u>liability</u> findings.  Specifically, this Court upheld the Hearing Officer's conclusions that Dracut: (1) violated state and federal law by failing to provide proper assessments and measurable goals, Order at 26-27; (2) issued IEPs that "were not reasonably calculated to confer any meaningful benefit" with respect to language pragmatics, Order at 29; (3) provided inadequate vocational services, Order at 31; and (4) failed to provide independent living services reasonably calculated to benefit C.A. after he graduated from high school, Order at 32.

**ii.     Relief Actually Achieved.**

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." <u>Alfonso</u>, 66 F. Supp. 2d at 199, quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424,

440 (1983). Such is the case here. The Hearing Officer awarded the Individual Defendants all of the relief they requested and (with respect to the hiring of the Individual Defendant's consultants) awarded additional relief that the Individual Defendants did not request. Compare AR 9 with AR 235 and SAR 7 with SAR 152. This Court altered that award in only two respects. First, it remanded the Hearing Officer's vocational and independent living services awards for reconsideration in light of the Court's legal rulings. Opinion at 37. This cannot be characterized as a failure to obtain requested relief, as (1) the Court left intact the Hearing Officer's service award to correct C.A.'s pragmatic language deficit (which this Court described as "the central component" of C.A.'s disability, Order at 29), and (2) the Hearing Officer can still, after reconsideration, award equivalent or reduced vocational and independent living services under either federal or state law.[9] Second, this Court reversed the Hearing Officer's order for Dracut to hire the Individual Defendants' consultants, although it did not reverse the order to the extent it required Dracut to hire independent consultants with sufficient expertise at a reasonable rate of pay, which the Court found to be $125 per hour. Id. at 39-40. This also cannot be characterized as a failure to obtain requested relief, as (1) the relief Ordered by this Court has the same value as the relief ordered by the Hearing Officer, and (2) as noted above, the Individual Defendants did not ask the Hearing Officer to order Dracut to hire the Individual Defendants' consultants in the first place. See AR 9.

### iii. Societal Importance Of The Right Vindicated.

Congress enacted the IDEA to reduce the need for taxpayers to "spend billions of dollars over the lifetimes of [persons with disabilities] to maintain such persons as dependents and in a

---

[9] While this Court did hold that the Hearing Officer could not extend eligibility, the Individual Defendants made clear in their April 2, 2010 letter to this Court that the Individual Defendants were not concerned with an eligibility extension if compensatory services could be fashioned appropriately. See Docket Entry # 127 at 2.

minimally acceptable lifestyle. With proper education services, many would be able to become productive citizens, contributing to society instead of being forced to remain burdens. Others, through such services, would increase their independence, thus reducing their dependence on society." Board of Educ. v. Rowley, 458 U.S. 176, 201 (1982) (quoting Senate Report).

This particular case corrected Dracut's failure to provide transitional services reasonably calculated to allow C.A. to live independently outside high school. Correcting such failures is critical to both the individual affected and society as a whole, because when a district provides inadequate transition services "[y]ears of special education will be wasted while those individuals languish at home, their ability to become independent and self-sufficient (therefore making a positive contribution to society) placed at significant risk." H.R. Rep. 101-544, 9, 1990 U.S.C.C.A.N. 1723, 1731.

Moreover, as explained in the Hagerty Aff., the issues this litigation has resolved will have a significant impact on disabled students' rights. Id. ¶ 9. The Order confirms the principle that a special education student who has received inappropriate transition services prior to graduation may receive compensatory services past his scheduled graduation date, even if he has met all state and local graduation requirements. This issue has been in controversy for approximately five years, during which DESE had issued guidance to school districts that differed from that provided by BSEA decisions. The Order also helps to make clear the standards by which transition goals and services should be assessed and the form that relief may take after a FAPE violation has been established. Id.

An additional metric of the societal importance of the rights vindicated by this litigation is the effort the Commonwealth itself was willing to expend to help defend them. The Attorney General filed a combined total of 390 pages of briefs and exhibits to defend the Decisions. See

Docket Entries ## 91-92, 102-103, 111, 125.  That fact alone speaks volumes about the value the Commonwealth places on the rights the Initial and Compliance Decisions protect.

Taken as a whole, neither the result nor the rights at stake in this litigation warrant a fee reduction.  Cf. Alfonso, 66 F. Supp. 2d at 201 (reducing lodestar by fifteen percent where prevailing party "lost on two heartland issues, [had a] lack of success with respect to six defendants, and [failed] to recover the relief requested from the key defendants").  The Court should, accordingly, let the Individual Defendants' lodestar calculation stand.

### C. Costs and Expenses:

The Individual Defendants seek reimbursement for the costs set forth in the following table:

| | |
|---|---:|
| Lexis Charges – DLA Piper | $274.90 |
| Westlaw Charges – DLA Piper | $8,800.23 |
| Duplicating – DLA Piper | $1,477.65 |
| Commercial Printing – DLA Piper | $667.73 |
| Transcription, Service, Mailing, and Courier Costs – DLC | $1,742.13 |
| **Sum:** | **$12,962.64** |

Iverson Aff. ¶ 10;  Coveney Aff. ¶ 12; Alfonso, 66 F.Supp.2d at 201-02 (discussing reimbursable costs).  These figures incorporate a 50% reduction in the amount DLA Piper expended on electronic research.  This reduction accounts for costs associated with the now-settled Counterclaims.  See Iverson Aff. ¶ 10.

## CONCLUSION

For the reasons set forth above, the Individual Defendants request that the Court order Dracut to pay them a total of $665,309.09 in attorneys' fees and $12,962.64 in costs.

                      C.A. AND P.A.

By:   /s/ Matthew Iverson
      Pamela J. Coveney
      BBO #102780
      Janine A. Solomon
      BBO #567964
      Disability Law Center
      11 Beacon Street, Suite 925
      Boston, MA  02108
      (617) 723-8455 (telephone)

      Daniel E. Rosenfeld (BBO #560226)
      Matthew J. Iverson (BBO #653880)
      DLA PIPER LLP (US)
      33 Arch Street, 26th Floor
      Boston, MA  02110-1447
      (617) 406-6000 (telephone)
      (617) 406-6100 (fax)

September 17, 2010

### CERTIFICATE OF SERVICE

I, Matthew Iverson, hereby certify that a true copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent by first-class mail to those indicated as non-registered participants on September 17, 2010.

      /s/ Matthew Iverson

**CERTIFICATE OF COMPLIANCE**
**WITH LOCAL RULE 7.1(A)(2)**

      Pursuant to L.R. 7.1(A)(2), the undersigned counsel hereby certifies that on September 14, 2010 I contacted opposing counsel in a good faith effort to resolve or narrow the issues presented by the Motion and was unable to resolve or narrow those issues.

                                                  /s/ Matthew Iverson
                                                  Matthew Iverson